# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

| | | |
|---|---|---|
| TRAVIS MERRILL and ROXANE MERRILL, individually and as parents and next friends of A.M., a minor, *Plaintiffs,* | ) ) ) ) ) | Case No._____ |
| -v- | ) ) ) | **COMPLAINT AND JURY DEMAND** |
| FRISCO INDEPENDENT SCHOOL DISTRICT *Defendants.* | ) ) ) | |

## CIVIL ACTION

*This action alleges, inter alia, violations of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, together with violations of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Individuals with Disabilities Education Act, arising from Frisco Independent School District's deliberate indifference to the safety, well-being, and educational rights of A.M., a disabled minor student. These violations stem from the District's failure to protect A.M. from repeated physical abuse by a school employee, its disregard for clear warning signs and parental reports, and its systemic denial of the specialized services and accommodations required to provide her with meaningful access to education.*

Plaintiffs TRAVIS and ROXANE MERRILL, Individually and as Parents and Next Friends of their minor daughter, A.M., file this Complaint against Defendant FRISCO INDEPENDENT SCHOOL DISTRICT ("Frisco ISD"), alleging as follows:

## INTRODUCTION

1. This action arises from the repeated physical abuse, emotional trauma, and educational deprivation suffered by A.M., a fourteen-year-old blind, nonverbal student with cerebral palsy and epilepsy, while in the custody and care of Frisco Independent School District ("Frisco ISD"). Despite her profound disabilities and complete dependence on adult supervision,

the District failed to protect her from harm and failed to provide the basic safety and educational support required under federal law.

2.      Between October and December 2024, A.M. returned home with unexplained bruises, deep nail marks, and facial injuries. Her parents repeatedly alerted Frisco ISD to these injuries and expressed escalating concerns for her safety. Although the District acknowledged the injuries, it took no meaningful steps to investigate, intervene, or safeguard A.M. from further harm.

3.      On December 20, 2024, two staff members witnessed a Frisco ISD paraprofessional first tear A.M.'s headphones off of her head which ripped at her hair with the hair clip that was attached, and then violently slap A.M. across the face. The assault was so severe that it immediately prompted a criminal investigation and charges under Texas Penal Code § 22.01(c)(1) (Assault Against a Disabled Individual). This incident confirmed what the previous injuries had already signaled, that A.M. had been subjected to ongoing abuse while under the District's supervision.

4.      Despite clear warning signs, documented injuries, and explicit parental reports indicating that A.M. was not safe at school, Frisco ISD kept A.M. in the care of the same paraprofessional until the moment of the assault. As a result of the District's deliberate indifference, A.M. has suffered significant trauma, including PTSD symptoms, nightmares, emotional regression, and a considerable loss of educational benefit.

5.      Frisco ISD further violated federal disability law by failing to provide the necessary special education services and accommodations for A.M.'s access to Free Appropriate Public Education. The District provided grossly inadequate therapy minutes, placed A.M. in unsuitable instructional settings, and denied her meaningful access to the services mandated by her Individualized Education Program. This Complaint seeks redress under the United States Constitution, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Individuals with Disabilities Education Act, along with additional state-law claims arising from

the same conduct.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Individuals with Disabilities Education Act.

7.      The Court also has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to these claims occurred in Collin County, Texas.

## PARTIES

9.      At all times relevant hereto, Plaintiffs Travis and Roxane Merrill, individually and as parents and next friends of A.M., a minor, are adult residents of Collin County, Texas. As A.M.'s parents and legal guardians, they bring this action on her behalf and assert their own individual claims arising from the harms described herein.

10.      At all times relevant hereto, Defendant Frisco Independent School District ("Frisco ISD") was and is a public school district organized under the laws of the State of Texas and a "public entity" within the meaning of Title II of the Americans with Disabilities Act. Frisco ISD may be served with process through its Superintendent at 5515 Ohio Drive, Frisco, Texas 75035.

11.      Plaintiffs' claims against Frisco ISD extend to and include the acts and omissions of the District's agents, employees, contractors, administrators, supervisors, paraprofessionals, and all persons acting under its authority or on its behalf, including but not limited to personnel assigned to Hunt Middle School, the campus where the events giving rise to this action occurred.

Frisco ISD is responsible for the conduct of its agents and employees under the doctrines of respondeat superior, agency, and all other applicable principles of law.

12.    The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

13.    Frisco ISD's actions and omissions were undertaken pursuant to the District's policies, practices, and customs, including but not limited to: (a) failing to train and supervise staff assigned to medically fragile and nonverbal students; (b) failing to investigate or respond to reports of injuries and parental safety concerns; (c) failing to implement protective measures for vulnerable students; and (d) maintaining a practice of disregarding known risks of abuse in special education settings. These policies and customs were the moving force behind the constitutional and statutory violations suffered by A.M.

## FACTUAL BACKGROUND

17.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

18.    A.M. is a fourteen-year-old student with multiple significant disabilities, including blindness caused by cortical visual impairment, cerebral palsy, epilepsy, and a speech impairment that makes her nonverbal. She depends entirely on adult caregivers for communication, mobility, safety, and daily activities. Frisco ISD was fully aware of A.M.'s disabilities, her vulnerability, and her inability to report abuse or protect herself.

19.    During the fall semester of 2024, A.M. began returning home from school with unexplained injuries. On October 7, 2024, she suffered a black eye while in the care of Frisco ISD staff. The District documented the injury but did not conduct any meaningful investigation

or implement additional safety measures.

20.    On November 18, 2024, A.M. returned home with deep nail marks and bruising on her forearm. These injuries were severe enough to break the skin and required weeks to heal. Her parents immediately contacted the school. Although staff acknowledged seeing the injuries, they could not explain how they occurred. No protective action was taken.

21.    On December 9, 2024, A.M. sustained another facial injury while seated between two paraprofessionals. The District again documented the injury but failed to investigate or modify A.M.'s supervision or placement.

22.    On December 3, 2024, A.M.'s father raised explicit safety concerns during an ARD meeting. He reported inconsistent bruising, damage to A.M.'s equipment, and his belief that A.M. was not safe at school. The District acknowledged these concerns in the ARD documentation but took no steps to increase supervision, remove staff, or otherwise protect A.M.

23.    Despite these repeated warning signs, Frisco ISD continued to assign A.M. to the same paraprofessional staff and failed to implement any additional safeguards.

24.    On December 20, 2024, at approximately 2:55 p.m., a Frisco ISD paraprofessional, Karthiga Moorthy, was witnessed by two staff members ripping A.M.'s headphones off, yelling at her, and slapping her across the face with an open hand hard enough to turn her head. On that day, as is her usual practice when wearing the headphones,[1] A.M. secured

---

[1] A.M. should not have been wearing the headphones in a school setting. Due to blindness and physical impairment, A.M.'s hearing is the best way for her to learn. With the headphones on, she is completely isolated. Travis and Roxane Merrill would routinely place headphones on her in the morning for the bus ride to school due to noises that were bothersome to her during the ride and left instructions for the school staff to remove them when she arrived, keep them off during the school day, and place them back on her head before her bus ride home in the afternoon. A.M.'s parents reminded the school of this dozens of times in person, in other communications, and during ARD meetings. They had contacted the assistant principal, the principal, and finally Shayna Johnson, at FISD Administration office to request her help in telling the school to stop using the headphones during educational hours. Despite these efforts, A.M. continually wore them at school, all day long and it was even noted how it was very difficult to get her to do any work/therapy goals as she wouldn't listen to the instructions due to her headphones and iPad playing during the entire school day. Once again, this demonstrates the school's indifference toward her education.

them in place on top of her head by attaching a large claw/jaw-clip style hairclip over the center of the top of the headphones which firmly anchored the headphones to A.M.'s naturally curly hair. The amount of force needed to rip the headphones off of A.M.'s head without first carefully disengaging the large claw hairclip was significant, and resulted in the sudden yanking of A.M.'s hair. This was a painful and traumatic event for A.M. even before the hard slap to the face which immediately followed. The assault occurred in the ALC classroom at Hunt Middle School.

25.    The assault was immediately reported to the school administration. A.M. was taken to the school nurse, who documented the incident. Frisco ISD notified law enforcement, and the Frisco Police Department initiated a criminal investigation. Ms. Moorthy was subsequently charged, convicted, and sentenced under Texas Penal Code § 22.01(c)(1) for Assault Against a Disabled Individual.

26.    The December 20 assault confirmed what the earlier injuries had already indicated: A.M. had been subjected to ongoing abuse while under the District's supervision. The District's failure to act on prior injuries and parental warnings directly enabled the assault to occur.

27.    Following the assault, A.M. experienced significant trauma. She began crying throughout the school day, refusing therapy, exhibiting fear of new people, and suffering nightmares. She regressed in communication, mobility, and emotional regulation. After being seizure-free for three years, A.M. experienced seizure activity during the fall of 2024, which her treating physician attributed to trauma sustained at school. She was later prescribed medication to address PTSD-related symptoms.

28.    In addition to failing to protect A.M. from physical harm, Frisco ISD also did not provide the special education services mandated by federal law. A.M.'s Individualized Education Program (IEP) specifies specialized instruction and therapy services, but the District offered

6

significantly inadequate service minutes, including no direct occupational therapy, about eleven minutes per week of physical therapy, and only minimal speech therapy. These minutes were not enough to meet A.M.'s IEP goals or to offer meaningful educational benefits.

29.     The District also placed A.M. in inappropriate instructional settings, including a choir class, despite her blindness and nonverbal status. This placement caused distress and denied her meaningful access to the curriculum.

30.     After the assault, Plaintiffs requested reasonable measures to ensure A.M.'s safety and support her recovery, including a school liaison, access to classroom camera footage, and compensatory therapy services. Frisco ISD refused these requests. Although a classroom camera was eventually installed, the District prohibited Plaintiffs from viewing the footage.

31.     As a result of Frisco ISD's actions and omissions, A.M. suffered physical injury, emotional trauma, regression in skills, and loss of educational benefit. Plaintiffs have incurred medical expenses, therapy costs, and significant disruption to family life, including the potential loss of income resulting from increased caregiving.

32.     The harm suffered by A.M. was the direct, foreseeable, and proximate result of Frisco ISD's actions and omissions. The District had actual knowledge of escalating injuries, parental warnings, and the heightened vulnerability created by A.M.'s blindness, nonverbal status, and medical conditions. Despite this knowledge, the District failed to intervene, remove dangerous personnel, or implement safety measures. The assault and resulting trauma were the predictable outcome of the District's deliberate indifference.

33.     A.M. began attending a different school in the Fall of 2025 still within the Frisco ISD. Beginning this school year, the District has obstructed the smooth administration of A.M.'s diet at school in a seemingly retaliatory manner. For years since she was in elementary school, A.M. has been on a Keto diet. She has been fed via a g-tube with her parents making her food at

home by blending it, and then with the nurse or the teacher later in the day feeding her at school. Her diet is very specific and the exact formula of a 2:1 Keto ratio is not commercially manufactured. For the last eight years, A.M. was fed homemade, blended food at school without any issue. Beginning this year, however, the school has refused to feed her this homemade blended diet. They insist on manufactured food that doesn't exist. Travis and Roxane Merrill provided many pages of doctor's orders, labels, expiration dates, and all information that the District requested, but the school nursing staff still responded by insisting they are not able to feed A.M. homemade food as it is an "unknown substance."  Her parents had to find the closest food available to her appropriate ratio: manufactured food with milk added to make it the correct ratio. This is the only way the school would feed A.M. this year and before this option was established, the school administration simply left her hungry, without any nutrition all day, despite having her homemade lunch in her bag at the school. Having to mix A.M.'s lunch at school by combining the manufactured food with milk carries its own potentially severe risks to A.M.'s health. If the nurse or other person mixing her food mistakenly adds more milk or less formula than is called for, that could bring her Keto ratio to less than the prescribed 2:1 amount, which could have cause A.M. to have severe life-threatening seizures.

**COUNT I**
**42 U.S.C. § 1983 - FOURTEENTH AMENDMENT**
**State-Created Danger & Special Relationship**

34.    Plaintiffs hereby repeat all of the allegations contained in the Complaint thus far above and incorporate the same as if fully set forth at length herein.

35.    Frisco ISD acted with deliberate indifference by consciously disregarding known and substantial risks to A.M.'s safety and educational access. The District had repeated notice, through documented injuries, staff observations, and explicit parental reports, that A.M. was being

harmed at school. Yet the District took no meaningful action to investigate, supervise, or protect her. This pattern of inaction, despite actual knowledge of danger, constitutes deliberate indifference under the Fourteenth Amendment, the ADA, Section 504, and the IDEA.

36. At all times relevant, Frisco ISD and its agents were acting under color of state law. Through their actions and omissions, they deprived A.M. of rights secured by the Fourteenth Amendment, including her substantive due process right to bodily integrity and to be free from state-created dangers.

37. Frisco ISD acted with deliberate indifference to A.M.'s safety and constitutional rights. Despite repeated and escalating injuries, documented by school personnel, and explicit parental warnings that A.M. was not safe in her classroom, the District failed to investigate, intervene, or implement any protective measures. Instead, the District knowingly left A.M., a blind, nonverbal, medically fragile child, under the supervision of the same paraprofessional who ultimately assaulted her.

38. Because of A.M.'s blindness, nonverbal status, cerebral palsy, epilepsy, and profound developmental impairments, she was wholly dependent on Frisco ISD personnel for safety, communication, mobility, and basic care during the school day. The District exercised complete control over her physical environment and access to assistance, rendering her unable to protect herself or seek help. This custodial relationship imposed an affirmative constitutional duty on the District to ensure her safety and prevent foreseeable harm.

39. By ignoring clear warning signs, failing to supervise or remove dangerous personnel, and continuing to place A.M. in the custody of an employee who posed a known and obvious risk of harm, Frisco ISD intentionally increased the danger to A.M. The District's actions put her in a more vulnerable position than she would have otherwise faced.

40. Independently, Frisco ISD had a constitutional duty to protect A.M. under the

"special relationship" doctrine. Because of her severe disabilities, A.M. was completely dependent on the District for her safety, supervision, and physical care during the school day. Frisco ISD took custody and control of A.M. in a way that made her unable to defend herself or seek outside help, thus creating a special custodial relationship that imposed an active duty to ensure her safety.

41.     Frisco ISD's failure to act despite known risks, its disregard for parental reports, and its decision to leave A.M. in the care of the paraprofessional who ultimately assaulted her constitute conduct that is arbitrary, shocking to conscience, and incompatible with the standards of decency required by the Fourteenth Amendment.

42.     As a direct and proximate result of Frisco ISD's deliberate indifference and unconstitutional conduct, A.M. suffered physical injury, emotional trauma, psychological regression, and loss of educational benefit. Plaintiffs have likewise suffered damages, including medical expenses, emotional distress, and economic losses.

43.     Plaintiffs seek compensatory damages for all injuries suffered, as well as punitive damages to the extent permitted by law, together with attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT II
## ADA TITLE II

44.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

45.     A.M. is a qualified individual with disabilities within the meaning of Title II of the Americans with Disabilities Act. She is blind, nonverbal, and has cerebral palsy, epilepsy, and significant developmental impairments. Frisco ISD is a public entity subject to Title II and is required to provide A.M. with equal access to its programs, services, and activities.

46.     Frisco ISD denied A.M. meaningful access to education and related services by failing to provide a safe educational environment, failing to implement reasonable

accommodations necessary for her participation, and failing to modify policies and practices to meet her disability-related needs. The District placed A.M. in instructional settings that were fundamentally incompatible with her disabilities, including a choir class in which she could not meaningfully participate due to her blindness and nonverbal status.

47.     The District further denied A.M. equal access by refusing to provide compensatory services after she suffered trauma at school, by failing to adjust her services or supports following the assault, and by failing to implement safety measures necessary to protect her from foreseeable harm. These failures deprived A.M. of the opportunity to benefit from her education on an equal basis with nondisabled peers.

48.     Frisco ISD acted with deliberate indifference. The District had actual knowledge of A.M.'s disabilities, her escalating injuries, and her parents' repeated warnings that she was not safe at school. Despite this knowledge, the District failed to take reasonable steps to protect her, to modify her services, or to ensure that she could safely and meaningfully access the District's programs.

49.     As a direct and proximate result of Frisco ISD's violations of Title II, A.M. suffered physical injury, emotional trauma, regression in skills, and loss of educational benefit. Plaintiffs have likewise incurred medical expenses, therapy costs, and other damages.

### COUNT III
### SECTION 504 OF THE REHABILITATION ACT

50.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

51.     Frisco ISD is a recipient of federal financial assistance and is therefore subject to the requirements of Section 504 of the Rehabilitation Act, which prohibits discrimination against qualified individuals with disabilities and mandates that such individuals receive meaningful access to the District's programs, services, and activities.

52.     A.M. is a qualified individual with disabilities within the meaning of Section 504. Her blindness, nonverbal status, cerebral palsy, epilepsy, and developmental impairments were known to Frisco ISD, and the District was obligated to provide her with reasonable accommodations, appropriate services, and a safe educational environment.

53.     Frisco ISD discriminated against A.M. on the basis of her disabilities by failing to provide the services, supports, and protections necessary for her to access her education. The District failed to implement the specialized instruction and therapy services required by her Individualized Education Program, including adequate speech, physical, occupational, and vision services.

54.     The District further denied A.M. equal access by failing to ensure her physical safety, despite clear evidence of escalating injuries and explicit parental warnings. By allowing a paraprofessional to repeatedly supervise and ultimately assault A.M., the District subjected her to harm that nondisabled students would not have faced and denied her the opportunity to participate in school programs on an equal basis.

55.     Frisco ISD also denied A.M. access to therapy and instruction by placing her in inappropriate educational settings, including a choir class incompatible with her blindness and nonverbal status, and by refusing to provide compensatory services or trauma-informed supports after the assault. These failures deprived A.M. of meaningful educational benefit and caused regression in her skills.

56.     Frisco ISD acted with deliberate indifference. The District had actual knowledge of A.M.'s disabilities, her escalating injuries, and the substantial risk of harm she faced, yet consciously disregarded that risk by failing to take reasonable steps to protect her or modify her services. This deliberate inaction constitutes intentional discrimination under Section 504.

57.     As a direct and proximate result of the District's violations of Section 504, A.M.

suffered physical injury, emotional trauma, regression in communication and mobility, and loss of educational benefit. Plaintiffs have likewise incurred medical expenses, therapy costs, and other damages.

**COUNT IV**
**INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA)**

58. Plaintiff hereby repeats all of the allegations and exhibits contained in the Complaint thus far above and incorporates same as if fully set forth at length herein.

59. The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., guarantees students with disabilities the right to a Free Appropriate Public Education ("FAPE") tailored to their unique needs through an appropriately developed and implemented Individualized Education Program ("IEP"). Frisco ISD was obligated to provide A.M. with specialized instruction, related services, and a safe educational environment necessary for her to make meaningful progress.

60. Frisco ISD denied A.M. a FAPE by failing to implement the services, supports, and instructional components required by her IEP. The District provided grossly inadequate therapy minutes, including no direct occupational therapy, minimal physical therapy, and insufficient speech therapy, rendering A.M.'s IEP impossible to implement with fidelity.

61. The District further denied A.M. a FAPE by failing to provide a safe educational environment. A.M. suffered repeated injuries while under the District's supervision, culminating in a witnessed assault by a paraprofessional. A safe environment is a prerequisite to the delivery of special education services, and the District's failure to ensure A.M.'s safety directly impeded her ability to access and benefit from her education.

62. After the assault and resulting trauma, Frisco ISD refused to provide compensatory education or trauma-informed services necessary to remediate A.M.'s regression. The District failed to adjust her IEP, modify her services, or provide additional supports despite clear evidence

that A.M. had lost skills and educational benefits as a result of the abuse.

63.    Frisco ISD also failed to address A.M.'s trauma-related regression, including her increased fear, refusal to participate in therapy, emotional withdrawal, and loss of previously acquired skills. The District's refusal to provide appropriate interventions or revise her IEP in response to these needs constitutes a further denial of FAPE.

64.    As a direct result of Frisco ISD's violations of the IDEA, A.M. suffered educational loss, regression in communication and mobility, and deprivation of the services necessary for her to make progress. Plaintiffs seek compensatory education, reimbursement for related expenses, and reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3).

65.    Plaintiffs' claims under the ADA, Section 504, and 42 U.S.C. § 1983 are not subject to IDEA administrative exhaustion because they seek relief that the IDEA cannot provide, including compensatory damages for physical injury, emotional trauma, violations of constitutional rights, and disability-based discrimination. These claims do not challenge the adequacy of A.M.'s IEP but instead arise from Frisco ISD's failure to protect her from abuse, its deliberate indifference to known safety risks, and its discriminatory denial of equal access to education. Because the gravamen of these claims concerns physical abuse, constitutional violations, and discrimination, not the denial of a FAPE, exhaustion is not required under 20 U.S.C. § 1415(l).

## COUNT V
### NEGLIGENCE

66.    Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

67.    Frisco ISD owed A.M. a duty to exercise ordinary care in the hiring, training, supervision, and retention of the personnel entrusted with her safety and daily care. Given A.M.'s

14

profound disabilities and complete dependence on adult supervision, the District had an enhanced obligation to ensure that staff assigned to her were competent, properly trained, adequately supervised, and capable of providing safe and appropriate care.

68. Frisco ISD breached this duty by negligently supervising, training, and retaining the paraprofessional who repeatedly interacted with A.M. and ultimately assaulted her. The District failed to investigate or respond to escalating injuries, failed to remove or monitor the paraprofessional despite clear warning signs, and failed to implement reasonable safety measures that would have prevented foreseeable harm.

69. As a direct and proximate result of Frisco ISD's negligence, A.M. suffered physical injury, emotional trauma, psychological regression, and loss of educational benefit. Plaintiffs have likewise incurred medical expenses, therapy costs, and other damages arising from the District's negligent acts and omissions.

## COUNT VI
## BATTERY

70. Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

71. Under Texas law, battery consists of an intentional, harmful, or offensive physical contact with another person. On December 20, 2024, a Frisco ISD paraprofessional intentionally struck A.M. across the face with an open hand, causing harmful and offensive physical contact. This conduct constitutes battery.

72. At all times relevant, the paraprofessional was acting within the course and scope of her employment with Frisco ISD and was an agent, employee, and representative of the District. Her interactions with A.M. occurred during school hours, in the classroom, and while performing duties assigned by the District.

73.    Frisco ISD is vicariously liable for the paraprofessional's tortious conduct under the doctrine of respondeat superior because the battery occurred while the employee was performing, or purporting to perform, her assigned duties and acting on behalf of the District.

74.    As a direct and proximate result of the battery, A.M. suffered physical injury, emotional trauma, psychological regression, and related damages. Plaintiffs seek all damages available under Texas law.

## COUNT VII
## TEXAS TORT CLAIMS ACT

75.    Plaintiff hereby repeats all of the allegations and Exhibits contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

76.    Frisco ISD's negligence falls within the waiver of governmental immunity provided by the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code § 101.021. The District's negligent supervision, training, and retention of the paraprofessional involved the use, misuse, and non-use of tangible personal property and school facilities, including classroom equipment, instructional materials, assistive devices, and the physical environment in which A.M. was placed. The District's failure to properly use and supervise such property contributed to the conditions that led to the assault and the injuries that followed.

77.    Frisco ISD also used tangible personal property, including specialized seating, mobility equipment, and classroom materials, in a manner that failed to protect A.M. and increased her vulnerability to harm. The District's negligent use and non-use of such property proximately caused A.M.'s injuries.

78.    Under Tex. Civ. Prac. & Rem. Code § 101.021(2), governmental immunity is waived for personal injuries proximately caused by the negligence of a governmental employee acting within the scope of employment when the injury arises from the use of tangible personal

property. Because A.M.'s injuries were proximately caused by the negligent acts and omissions of Frisco ISD employees involving such property, the District's immunity is waived.

79.     As a direct and proximate result of Frisco ISD's negligence, A.M. suffered physical injury, emotional trauma, and related damages. Plaintiffs seek all damages available under the TTCA.

### PRAYER FOR RELIEF

80.     **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiffs TRAVIS MERRILL and ROXANE MERRILL, individually and as parents and next friends of A.M., a minor, respectfully request that this Court enter judgment in their favor and against Defendant FRISCO INDEPENDENT SCHOOL DISTRICT, and award, jointly and severally, general, special, compensatory, and punitive damages to the extent permitted by law; compensatory education and equitable relief under the IDEA; reasonable attorneys' fees and costs of suit with interest pursuant to 42 U.S.C. § 1988 and 20 U.S.C. § 1415(i)(3); and such other and further relief as the Court may deem just, proper, and equitable.

### JURY DEMAND

81.     Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

### CERTIFICATION

82.     Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying,

or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,
**LENTO LAW GROUP, P.C.**

Robert S. Mactavish, Esquire
Florida Bar No. 0596388
3003 N Central Avenue - Suite 685
Phoenix, AZ 85012
Phone: 602.960.9400
Fax: 707.215.3600
Cell: 575.517.6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*