# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

| | | |
|---|---|---|
| TRAVIS MERRILL and ROXANE MERRILL, individually and as parents and next friends of A.M., a minor, *Plaintiffs,* | )<br>)<br>)<br>)<br>) | **Civil Action No. 4:26-cv-00199-RWS** |
| -v- | )<br>)<br>)<br>) | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| FRISCO INDEPENDENT SCHOOL DISTRICT<br>*Defendants.* | )<br>)<br>) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs Travis and Roxane Merrill, individually and as parents and next friends of A.M., file this Response in Opposition to Defendant Frisco Independent School District's Motion for Partial Dismissal and respectfully show the Court as follows:

## I. INTRODUCTION

Defendant's Motion to Dismiss rests on a series of mischaracterizations of the pleadings, of the governing legal standards, and of the remedies Plaintiffs seek. When the Complaint is read as Rule 12(b)(6) requires, accepting all well-pleaded facts as true and drawing all reasonable inferences in Plaintiffs' favor, it alleges a coherent and detailed account of months of escalating injuries to a profoundly disabled child, repeated parental warnings, and the District's continued failure to intervene until the day a Frisco ISD paraprofessional was witnessed ripping A.M.'s headphones from her head and striking her across the face. The paraprofessional was later criminally convicted for assaulting a disabled individual. These allegations are not speculative. They are specific, documented, and supported by dates, witnesses, and the District's own records.

1

Against this factual backdrop, Defendant attempts to reframe Plaintiffs' claims as jurisdictionally barred, unexhausted, or legally unavailable. None of these arguments withstand scrutiny.

First, governmental immunity does not bar Plaintiffs' state-law negligence claims. Plaintiffs allege that A.M.'s injuries arose, in part, from the District's use, misuse, and non-use of tangible personal property, including the headphones forcibly removed from her head, the large claw clip securing them, and specialized classroom equipment, and from the District's negligent supervision and training of the staff assigned to her care. The Motion ignores these allegations and instead recasts the claims as if Plaintiffs sought to hold the District vicariously liable for an intentional tort. Plaintiffs do not. The negligence theories pleaded are independent, well-recognized, and fall within the Texas Tort Claims Act's waiver of immunity.

Second, IDEA exhaustion does not apply to Plaintiffs' ADA, §504, or §1983 claims. The gravamen of these claims is not the adequacy of A.M.'s IEP, but the District's failure to protect her from physical abuse, its deliberate indifference to known safety risks, and its discriminatory treatment of a child whose disabilities rendered her uniquely vulnerable. Plaintiffs seek remedies, including compensatory damages for physical and emotional injury, that the IDEA cannot provide. Supreme Court precedent forecloses the District's exhaustion argument.

Third, Plaintiffs have pleaded a viable §1983 claim. The Fifth Circuit has long recognized that students possess a clearly established constitutional right to bodily integrity and that physical abuse by a school employee violates that right. Plaintiffs allege not only the assault itself, but a pattern of deliberate indifference by District administrators who documented injuries, received explicit parental warnings, and nevertheless continued to place A.M. in the care of the same paraprofessional. Plaintiffs further allege that these events were the product of District-level

policies, practices, and customs, including failures to train, supervise, investigate, and protect medically fragile students. These allegations satisfy *Monell* at the pleading stage.

## II. <u>STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction. When a Rule 12(b)(1) motion is based on the face of the pleadings, the Court must accept all well-pleaded factual allegations as true and may dismiss only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of establishing a lack of jurisdiction rests with the party asserting it, not with the plaintiff. Because federal courts are courts of limited jurisdiction, dismissal is appropriate only when jurisdiction is clearly lacking.

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. To survive dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not require probability; it requires only "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009). Dismissal is inappropriate unless the complaint, read as a whole, fails to allege facts that, if proven, would entitle the plaintiff to relief.

Plaintiffs' Complaint easily satisfies these standards. It sets forth detailed factual allegations describing months of escalating injuries to a profoundly disabled child, repeated parental warnings, the District's failure to intervene, and a witnessed assault resulting in a criminal

conviction. These allegations, taken as true, state plausible claims for relief under federal and state law.

### III. <u>ARGUMENT</u>

**A.**  **Governmental Immunity Does Not Bar Plaintiffs' State-Law Claims**

  **1. Use, misuse, and non-use of tangible personal property**

Frisco ISD argues that the Texas Tort Claims Act ("TTCA") waives immunity only for motor-vehicle claims. That is incorrect. The TTCA waives immunity when a plaintiff's injuries are "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if the injury arises from the operation or use of a motor-driven vehicle or motor-driven equipment," **or** when the claim involves a condition or use of tangible personal property. TEX. CIV. PRAC. & REM. CODE § 101.021(2). The Texas Supreme Court has repeatedly held that "use" under § 101.021(2) includes misuse and non-use of tangible personal property when that property is a contributing factor to the injury. *Robinson v. Cent. Tex. MHMR Ctr.*, 780 S.W.2d 169, (Tex. 1989); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, (Tex. 1976).

Plaintiffs allege precisely that. The Complaint states that A.M.'s injuries were proximately caused by the District's use, misuse, and non-use of tangible personal property, including:

- headphones forcibly ripped from her head,

- a large claw/jaw-clip hair clip anchoring the headphones,

- specialized seating and mobility equipment, and

- classroom materials and the physical environment in which she was placed.

(Dkt. 1 ¶¶ 24, 76–78).

4

Texas courts have long recognized that tangible personal property need not be the sole instrumentality of harm; it need only be a contributing factor.[1] The property here was more than incidental; it was the mechanism through which the paraprofessional applied force, and it was equipment that the District negligently supervised and failed to regulate despite repeated injuries and parental warnings.

Moreover, the Texas Supreme Court has held that a school district's negligent failure to supervise or properly use equipment assigned to a student can constitute a "use" of tangible personal property under the TTCA. See *Lowe*, 540 S.W.2d at 300 (failure to provide proper protective equipment constituted "use" of property). Plaintiffs' allegations fall squarely within this framework.

Texas Supreme Court precedent further confirms that negligent supervision claims remain actionable under the TTCA even when the immediate harm was inflicted intentionally. In *Texas A&M University v. Bishop,* 156 S.W.3d 580, (Tex. 2005), the Court held that the TTCA's intentional-tort exception does not bar claims where the governmental unit's own negligence, including negligent supervision, negligent training, or negligent failure to protect, proximately caused the injury. *Bishop* reinforces that Plaintiffs' claims are not an attempt to impose vicarious liability for the paraprofessional's assault, but instead allege independent negligence by Frisco ISD in supervising and managing the staff and equipment assigned to A.M.

At the Rule 12(b)(1) stage, the Court must accept these allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, (Tex. 2004). Because Plaintiffs have pleaded a viable TTCA waiver, dismissal for lack of jurisdiction is improper.

---

[1] Texas courts consistently hold that property need only contribute to the injury, not be the exclusive cause. See *Robinson v. Cent. Tex. MHMR Ctr*., 780 S.W.2d 169, 171 (Tex. 1989) (property "need only be a contributing factor" to trigger the TTCA waiver).

**2. The Negligent supervision theory avoids the TTCA's intentional-tort bar**

Frisco ISD next argues that Plaintiffs' battery claim is barred because the TTCA excludes intentional torts. TEX. CIV. PRAC. & REM. CODE § 101.057(2). But Plaintiffs do not seek to hold the District vicariously liable for the paraprofessional's intentional assault. Instead, Plaintiffs allege that the District's own negligence, including negligent supervision, negligent training, negligent retention, and negligent failure to protect, proximately caused A.M.'s injuries.

Texas courts have repeatedly held that the TTCA's intentional-tort exclusion does not bar negligence claims against a governmental unit simply because the immediate harm was inflicted intentionally. The key question is whether the plaintiff alleges an independent negligence theory. See *Young v. Dimmitt*, 787 S.W.2d 50, (Tex. 1990) (negligent supervision claim not barred even though injury resulted from intentional act); *City of Watauga v. Gordon*, 434 S.W.3d 586, (Tex. 2014) (distinguishing between intentional torts and negligence claims arising from failure to supervise or train).

Plaintiffs' negligence theories are independent and well-pleaded. They allege that the District:

- ignored escalating injuries,

- disregarded explicit parental warnings,

- failed to investigate or intervene,

- continued to assign A.M. to the same paraprofessional, and

- failed to supervise or train staff responsible for a medically fragile, nonverbal child.

(Dkt. 1 ¶¶ 19–23, 76–78).

These allegations state a classic negligent-supervision claim, which is actionable under the TTCA and not barred by § 101.057(2). The District's argument improperly conflates the paraprofessional's intentional conduct with the District's independent negligence.

Because Plaintiffs have pleaded a valid TTCA waiver and an independent negligence theory, governmental immunity does not bar their state-law claims.

**B.      IDEA Exhaustion Does Not Apply to Plaintiffs' Non-IDEA Claims**

**1. Exhaustion not required because Plaintiffs seek non-IDEA remedies**

The District's exhaustion argument fails at the threshold because Plaintiffs seek remedies that the IDEA cannot provide. In *Perez v. Sturgis Public Schools*, the Supreme Court held unequivocally that IDEA exhaustion is required only when a plaintiff seeks relief "also available under the IDEA." 598 U.S. 142, (2023). When a plaintiff seeks any remedy the IDEA does not authorize, including compensatory damages for physical or emotional injury, exhaustion is not required. ("The IDEA's exhaustion requirement applies only to suits that seek relief also available under the IDEA.").

Here, Plaintiffs seek:

- compensatory damages for physical assault,

- damages for emotional trauma and psychological regression,

- constitutional damages under 42 U.S.C. § 1983, and

- intentional discrimination damages under Title II of the ADA and § 504 of the Rehabilitation Act.

(Dkt. 1 ¶¶ 42–43, 49, 57).

None of these remedies are available under the IDEA. The IDEA authorizes only equitable relief, primarily prospective educational remedies such as compensatory education and reimbursement. It does not authorize damages for physical injury, emotional distress, constitutional violations, or discrimination. *Perez* squarely forecloses the District's argument.[2]

The District's Motion mischaracterizes Plaintiffs' claims by assuming they seek only IDEA-type relief. Plaintiffs expressly allege the opposite:

> *"These claims do not challenge the adequacy of A.M.'s IEP but instead arise from Frisco ISD's failure to protect her from abuse, its deliberate indifference to known safety risks, and its discriminatory denial of equal access." (Dkt. 1 ¶ 65).*

The Fifth Circuit has now applied *Perez* and confirmed that exhaustion is not required where, as here, the plaintiff seeks damages unavailable under the IDEA. In *K.I. v. Klein Independent School District*, 68 F.4th 749, (5th Cir. 2023), the court held that exhaustion is unnecessary when the relief sought "is not of the type the IDEA provides," including compensatory damages for physical or emotional injury. Likewise, in *T.B. v. Northwest Independent School District*, No. 23-10878, 2024 WL 1972997, at 3 (5th Cir. May 3, 2024), the Fifth Circuit reaffirmed that *Perez* controls and that exhaustion is not required for ADA, § 504, or § 1983 claims seeking non-IDEA remedies. These decisions foreclose the District's argument.

These Fifth Circuit decisions also confirm that exhaustion is not required where the gravamen of the complaint concerns physical abuse, discrimination, or constitutional injury rather than the adequacy of an IEP. *Klein ISD* emphasized that claims arising from "physical mistreatment, harassment, or discrimination" fall outside the IDEA's exhaustion requirement.

---

[2] *Perez* abrogated prior Fifth Circuit cases that had required exhaustion for ADA and § 504 damages claims, including those the District relies on. See *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, (2023).

Plaintiffs' allegations of physical assault, deliberate indifference, and disability-based discrimination fall squarely within this category.

Because Plaintiffs seek remedies unavailable under the IDEA, exhaustion is not required as a matter of law.

**2. Under *Fry*, the gravamen of Plaintiffs' ADA, § 504, and § 1983 claims is physical abuse and discrimination, not denial of FAPE**

Even apart from *Perez*, the District's exhaustion argument fails under *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017). *Fry* instructs courts to look to the gravamen of the complaint, not the labels attached to the claims. If the essence of the claim concerns the denial of a Free Appropriate Public Education ("FAPE"), exhaustion may be required. If the claim concerns something else, such as physical abuse, discrimination, or constitutional injury, exhaustion does not apply.

*Fry* provides two guidepost questions:

1. Could a non-disabled student bring the same claim? Yes. Any student physically assaulted by a school employee could bring the same claims for bodily integrity, assault, discrimination, and constitutional injury.

2. Could the same claim be brought against a public entity other than a school? Yes. A claim that a government employee physically assaulted a vulnerable individual, ignored escalating injuries, and discriminated based on disability could be brought against any public entity.

These questions confirm that Plaintiffs' ADA, § 504, and § 1983 claims do not seek to enforce the IDEA's FAPE guarantee. They seek redress for physical abuse, deliberate indifference,

constitutional violations, and disability-based discrimination, harms that exist independently of any educational program.

The District's attempt to reframe these claims as FAPE disputes is inconsistent with *Fry* and with the Complaint's detailed factual allegations.

**3. Even if exhaustion were required, it is an affirmative defense not suitable for resolution under Rule 12(b)(6)**

Finally, even if the Court were to conclude that IDEA exhaustion might apply, dismissal under Rule 12(b)(6) would still be improper. After *Perez*, exhaustion is not jurisdictional; it is an affirmative defense. See *Perez*, 598 U.S. at 150 (rejecting the argument that exhaustion is a jurisdictional prerequisite). The Fifth Circuit has likewise held that exhaustion is an affirmative defense that cannot support dismissal unless the failure to exhaust is clear from the face of the complaint. *See*, e.g., *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, (8th Cir. 2017) (cited approvingly in *Perez*).

The Complaint does not establish a failure to exhaust on its face. It alleges no facts showing that Plaintiffs were required to pursue, or failed to pursue, an IDEA due process hearing before filing suit. At this stage, the Court must draw all reasonable inferences in Plaintiffs' favor. *Twombly*, 550 U.S. at 555.

Because exhaustion is an affirmative defense and not apparent from the pleadings, dismissal under Rule 12(b)(6) is improper.

### C. Plaintiffs Have Pleaded a Viable §1983 Claim

**1. The Fifth Circuit recognizes bodily-integrity claims for abuse by school employees**

Frisco ISD's Motion disregards binding Fifth Circuit precedent establishing that public-school students possess a clearly established constitutional right to bodily integrity, and that physical abuse by a school employee violates that right. More than three decades ago, the Fifth Circuit held en banc that "students have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, (5th Cir. 1994) (en banc). The court further held that a school employee's physical or sexual abuse of a student constitutes a direct violation of that right.

This principle predates *Taylor*. In *Jefferson v. Ysleta Indep. Sch. Dist.,* 817 F.2d 303 (5th Cir. 1987), the Fifth Circuit recognized that a teacher's physical abuse of a student states a substantive due process claim because "the right to be free from bodily restraint and punishment is within the liberty interest protected by the Fourteenth Amendment." Numerous subsequent decisions reaffirm that physical abuse by a school employee violates a student's constitutional right to bodily integrity. See, e.g., *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351 (5th Cir. 2020) (recognizing bodily-integrity claims where school officials fail to protect students from known risks of abuse).

The Complaint alleges that a Frisco ISD paraprofessional "ripp[ed] A.M.'s headphones off, yelling at her, and slapp[ed] her across the face with an open hand hard enough to turn her head." (Dkt. 1 ¶ 24). The paraprofessional was later criminally convicted for assaulting a disabled

individual. (Id. ¶ 25). These allegations describe a textbook violation of A.M.'s clearly established right to bodily integrity under controlling Fifth Circuit law.[3]

The Fifth Circuit has also recognized that the constitutional right to bodily integrity applies with heightened force to vulnerable or disabled individuals. In *Doe v. Marshall*, 622 F.2d 118 (5th Cir. 1980), the court held that state actors violate substantive due process when they exploit or abuse individuals whose disabilities render them unable to protect themselves. A.M.'s profound disabilities, nonverbal status, and complete dependence on school staff for safety place her squarely within this protected class, further underscoring the constitutional violation here.

**2. Plaintiffs' § 1983 claim does not depend on special-relationship or state-created-danger**

The District devotes substantial argument to the proposition that the Fifth Circuit has not adopted the special-relationship or state-created-danger doctrines. That argument is misplaced. Plaintiffs' § 1983 claim does not depend on either theory.

The Fifth Circuit has made clear that when a state actor directly inflicts physical abuse on a student, the constitutional violation is complete without reference to special-relationship or state-created-danger doctrines. *Taylor*, 15 F.3d at 451–52. Those doctrines apply only when the state actor did not personally commit the abuse but instead failed to protect the plaintiff from a third party. Here, Plaintiffs allege both direct abuse by a District employee and deliberate indifference by supervisors who ignored escalating injuries and parental warnings.

The Fifth Circuit recognizes supervisory liability under § 1983 where a supervisor:

  1.  learns of a subordinate's abuse,

---

[3] The Fifth Circuit has repeatedly treated physical abuse by school employees as a per se violation of a student's substantive due process right to bodily integrity. See *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451–52 (5th Cir. 1994) (en banc).

       2.       demonstrates deliberate indifference by failing to act, and

       3.       thereby causes the constitutional injury.

*See Taylor*, 15 F.3d at 454–55 (superintendent and principal could be liable for deliberate indifference to teacher's abuse of student).

Plaintiffs allege that Frisco ISD administrators documented multiple injuries, received explicit warnings from A.M.'s parents that she was unsafe, acknowledged those concerns in ARD documentation, and nevertheless continued to place A.M. in the care of the same paraprofessional. (Dkt. 1 ¶¶ 19–23). These allegations state a plausible claim for supervisory liability under binding Fifth Circuit precedent.

Thus, even if the Fifth Circuit had never recognized special-relationship or state-created-danger theories, Plaintiffs' § 1983 claim would still survive because it is grounded in direct abuse by a state actor and deliberate indifference by supervisors, both independently actionable under § 1983.

### 3. Plaintiffs have adequately pleaded a *Monell* policy, practice, or custom

Frisco ISD argues that Plaintiffs have not pleaded municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). That argument fails. At the pleading stage, a plaintiff needs only to allege facts that plausibly show that the constitutional violation resulted from a municipal policy, practice, or custom. *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016). A plaintiff is not required to identify a specific written policy; a pattern of conduct or a widespread practice is sufficient.

The Fifth Circuit has repeatedly held that allegations of repeated failures to supervise, investigate, or intervene in the face of known risks are sufficient to plead a *Monell* policy or custom

at the Rule 12(b)(6) stage. In *Hicks-Fields v. Harris County*, 860 F.3d 803 (5th Cir. 2017), the court held that a plaintiff states a *Monell* claim by alleging a "pattern of similar constitutional violations" arising from failures to train or supervise employees. Plaintiffs allege exactly that: multiple injuries, repeated warnings, repeated failures to act, and systemic disregard for the safety of disabled students.

Plaintiffs allege that Frisco ISD maintained policies, practices, and customs of:

a) ignoring repeated injuries to a medically fragile, nonverbal student,

b) disregarding explicit parental warnings,

c) failing to investigate or intervene despite escalating harm,

d) failing to supervise or train paraprofessionals assigned to vulnerable students,

e) refusing to implement reasonable safety measures, and

f) maintaining systemic indifference to the safety of disabled students.

(Dkt. 1 ¶¶ 13, 19–33).

These allegations describe a sustained pattern of conduct, not an isolated incident. The Fifth Circuit has held that similar allegations of repeated failures to supervise, investigate, or protect students from known risks are sufficient to plead a *Monell* claim. *See Doe v. Edgewood*, 964 F.3d at 358–59 (allegations of repeated failures to act on known risks of abuse stated a Monell claim).

Plaintiffs further allege that these policies and customs were the "moving force" behind the violation of A.M.'s constitutional rights. (Dkt. 1 ¶ 13). This satisfies the causation requirement under *Monell*. *See Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001).

At this stage, Plaintiffs are not required to prove the existence of a policy or custom; they must only plead facts that make the claim plausible. They have done so.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss rests on mischaracterizations of the pleadings and misapplications of controlling law. When Plaintiffs' detailed factual allegations are accepted as true, as Rule 12 requires, they state plausible and legally cognizable claims under federal and state law. Plaintiffs have alleged a sustained pattern of escalating injuries to a profoundly disabled child, repeated parental warnings, deliberate indifference by District personnel, a witnessed assault resulting in a criminal conviction, and discriminatory and unconstitutional conduct that falls squarely within the protections of the ADA, § 504, the IDEA, and the Fourteenth Amendment.

Because the Complaint satisfies the standards of Rules 8, 12(b)(1), and 12(b)(6), Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety. Should the Court identify any pleading deficiency, Plaintiffs further request leave to amend, as justice requires.

Respectfully Submitted,
**LENTO LAW GROUP, P.C.**

Robert S. Mactavish, Esquire
Florida Bar No. 0596388
3003 N Central Avenue - Suite 685
Phoenix, AZ 85012
Phone: 602.960.9400
Fax: 707.215.3600
Cell: 575.517.6542
robert.mactavish@llgnational.com
*Attorney for Plaintiffs*